# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                          Case No. 08-CR-288

**JOHN ANTHONY**
        **Defendant.**

## DECISION AND ORDER

Defendant John Anthony entered guilty pleas to charges of possessing a firearm as a felon (count one) and possession of 5 grams or more of crack cocaine with intent to distribute (count two). At the time of the plea, the parties understood that defendant would likely qualify as a career offender under U.S.S.G. § 4B1.1 on count two, but they did not expect that he would qualify as an armed career criminal under 18 U.S.C. § 924(e) on count one. I advised defendant of the penalties he faced consistent with that understanding, i.e. a statutory maximum of 10 years on count one. See 18 U.S.C. § 924(a)(2).

However, the probation office later concluded that defendant qualified as an armed career criminal. Under the Armed Career Criminal Act ("ACCA"), a felon who possesses a firearm subsequent to sustaining three convictions for either a "violent felony" or a "serious drug offense" is subject to a minimum of 15 years (up to life) in prison. 18 U.S.C. § 924(e)(1). The pre-sentence report ("PSR") alleged three predicate convictions: (1) a November 3, 1997 conviction for delivery of "simulated" crack cocaine in Iowa state court (PSR ¶ 56); (2) a

November 3, 1997 conviction for delivery of crack cocaine in Iowa state court (PSR ¶ 57);[1] and (3) a September 14, 2005 conviction for possession with intent to distribute cocaine in Wisconsin state court (PSR ¶ 59). I adjourned the proceedings to permit the parties to explore this issue, then granted defendant time to file either an objection to the ACCA designation in the PSR or a motion to withdraw his pleas based on the misunderstanding as to his penalty range.

Defendant subsequently filed a letter and supporting documents contesting the ACCA designation, specifically the use of the ¶ 56 conviction as a predicate. The facts of that case as set forth in the PSR suggested that, notwithstanding the charge listed in the Iowa judgment, the conviction involved "real" crack cocaine, giving rise to the possibility that the judgment contained a clerical error. In his submission, defendant acknowledges that the criminal complaint in the case listed a charge of delivery of crack cocaine, not simulated crack, but he notes that the affidavit filed in support of the complaint indicated that the substance was to be sent to the Iowa crime lab for further testing. Defendant suggests that by the time the case concluded the lab tests had either not been done or had revealed that the substance was fake, leading to the conviction for distribution of simulated crack. He contrasts the ¶ 56 offense with the ¶ 57 conviction, which he concedes is a proper predicate. He suggests that tests demonstrating the authenticity of the crack in the ¶ 57 case must have been done, leading to the conviction for distribution of real drugs.

---

[1] Although the two Iowa convictions were entered on the same date, the offense dates were different. Under the guidelines, sentences imposed on the same day may in some cases be counted as one sentence, see U.S.S.G. § 4A1.2(a)(2), but the ACCA looks to the date of offense, requiring that predicate convictions be "committed on occasions different from one another." 18 U.S.C. § 924(e)(1).

In its response, the government agrees that the ¶ 56 conviction does not appear to be a proper ACCA predicate. The government notes that under 18 U.S.C. § 924(e)(2)(A), a "serious drug offense" must involve a "controlled substance" under 21 U.S.C. § 802, and simulated crack does not appear to qualify as a controlled substance under § 802(6). The government further notes that, according to the Iowa court's docket, despite the fact that the complaint charged distribution of crack cocaine defendant was bound over for trial on a charge of distribution of simulated crack. Thus, the government submits that the Iowa judgment is likely correct in listing the actual offense of conviction.

There are two issues here: (1) whether a conviction for distribution of "simulated" crack may serve as an ACCA predicate; and (2) if not, whether I should look beneath the Iowa judgment to determine whether the case involved real crack cocaine.

### 1. Distribution of Simulated Crack as an ACCA Predicate

The ACCA defines the term "serious drug offense" as follows:

> (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or
>
> (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]

18 U.S.C. § 924(e)(2)(A). The term "controlled substance" is in turn defined in § 802 as:

> a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter. The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1986.

21 U.S.C. § 802(6).

The Controlled Substances Act ("CSA") does not proscribe the knowing distribution of fake or simulated drugs. See, e.g., United States v. Sampson, 140 F.3d 585, 589 (4th Cir. 1998) ("Simply because a substance looks like cocaine, and the defendant misrepresents to his unsuspecting purchaser that the substance is cocaine, does not make the mere distribution of that substance a violation of the federal narcotics laws.").[2] Iowa law, unlike the CSA, treats simulated controlled substances the same as actual controlled substances. See Iowa Code § 124.401 ("[I]t is unlawful for any person to manufacture, deliver, or possess with the intent to manufacture or deliver, a controlled substance, a counterfeit substance, or a simulated controlled substance[.]"); see also State v. Meyer, 705 N.W.2d 676, 678 (Iowa Ct. App. 2005) (explaining that the Iowa legislature intended identical penalties for selling real and fake drugs). However, while § 924(e)(2)(A)(ii) permits state convictions to serve as ACCA predicates, it requires that such convictions involve a "controlled substance" as that term is defined in federal law.

Perhaps because the plain language of the statute provides the answer, I have found few cases addressing the issue. Courts have held that state convictions for distributing fake or look-alike drugs qualify as "controlled substance offenses" under the career offender guideline, see, e.g., United States v. Robertson, 474 F.3d 538, 543 (8th Cir. 2007), but the career offender guideline specifically includes as predicates cases involving "counterfeit

---

[2]But cf. United States v. Dominguez, 992 F.2d 678, 682 (7th Cir. 1993) (holding that the sale of a non-controlled substance which the defendant subjectively believes to be a controlled substance can constitute an attempt to distribute). The CSA also forbids the distribution of a "controlled substance analogue" under 21 U.S.C. §§ 802(32) & 813, but those provisions are not at issue here. See United States v. Hodge, 321 F.3d 429 (3d Cir. 2003) (holding that a wax and flour mixture is not a controlled substance analogue, and explaining that Congress did not intend to cover such substances under § 802(32)).

4

substances," U.S.S.G. § 4B1.2(b),[3] which courts have construed to include fake drugs, see, e.g., United States v. Mills, 485 F.3d 219, 222 (4th Cir.), cert. denied, 128 S. Ct. 413 (2007); United States v. Gardner, 534 F. Supp. 2d 655, 661 (W.D. Va. 2008). The ACCA contains no similar language. As noted, the ACCA requires that a qualifying state court conviction involve a controlled substance under the CSA.

I have discovered two decisions, both unpublished, suggesting that convictions for dealing ostensibly fake drugs qualify under the ACCA. The first, United States v. Camden, 177 Fed. Appx. 272, 274 (4th Cir. 2006), concluded, with no analysis, that a conviction for "distribution of an imitation controlled substance" qualified as a predicate under § 924(e). The second, United States v. Ferguson, 154 Fed. Appx. 839, 843 (11th Cir. 2005), upheld an ACCA designation where the defendant had five potential predicates, one of which was a state conviction for "possession of counterfeit cocaine with intent to distribute."[4] Although resolution of the issue was unnecessary given the four other predicates, the court stated: "Ferguson also erroneously argues that his conviction for possession of a counterfeit substance with intent to distribute cannot be a predicate offense. Yet, the Controlled Substances Act and § 924(e) make clear that this is a predicate offense. 21 U.S.C. § 841(a)(2) (2005)." Id.

The problem with Ferguson's conclusion is that the term "counterfeit substance" as used

---

[3] The guideline states: "The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b) (emphasis added).

[4] The Ferguson decision does not specify the State, but the briefs refer to a "Georgia conviction for Possession of Counterfeit cocaine." Brief for the Government, United States v. Ferguson, No. 05-10394, 2005 WL 4780321, at *23 (July 27, 2005).

5

in the CSA has a special meaning; it is not the same thing as fake or simulated:

> The term "counterfeit substance" means a controlled substance which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person or persons who in fact manufactured, distributed, or dispensed such substance and which thereby falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser.

21 U.S.C. § 802(7); see also § 841(a)(2) (making it a crime to distribute or dispense a "counterfeit substance"). In other words, a counterfeit substance under the CSA is a (real) controlled substance, which has been misbranded or mislabeled. State statutes covering simulated or fake drugs are thus not comparable to the federal counterfeit substance statute, which was designed to prosecute the unauthorized use of controlled substances found in commercial settings such as prescription drugs, not those sold in street deals. Gardner, 534 F. Supp. 2d at 661 (citing Sampson, 140 F.3d at 589).[5] Thus, Ferguson's conclusion, likely dicta in any event, is unpersuasive. I conclude, consistent with the plain language of § 924(e)(2)(A), that a "serious drug offense" must involve an actual "controlled substance."

### 2. Consideration of Underlying Facts

Generally, in determining whether a prior conviction qualifies as an ACCA predicate, the court applies a categorical approach, looking to the elements of the statute of conviction, rather than the defendant's underlying conduct. See, e.g., United States v. Smith, 544 F.3d 781, 786

---

[5]As the Gardner court also explained, the term "counterfeit substance" as used in U.S.S.G. § 4B1.2(b) is not the same as the statutory definition of that term in 21 U.S.C. § 802(7). 534 F. Supp. 2d at 661; see also Mills, 485 F.3d at 222-23 (finding that the term "counterfeit" as used in the guidelines simply means "imitation" or "non-genuine," thus encompassing fake drugs, and rejecting the defendant's attempt to incorporate the definition from § 802(7), which "speaks to the mislabeling and mispackaging of genuine controlled substances, not to the distribution of counterfeit controlled substances").

6

(7th Cir. 2008). When a statute encompasses multiple categories of offense conduct, some of which would qualify as a predicate and some of which would not, the court may look to a limited number of additional documents to determine the type of offense for which the defendant was convicted. See id. (citing Shepard v. United States, 544 U.S. 13, 16-17 (2005)). These additional materials are limited to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Shepard, 544 U.S. at 26. But the court may not rely on such documents to base a recidivist enhancement on conduct that violates a statutory provision other than the one the defendant was convicted of violating. See United States v. Evans, No. 08-2424, 2009 WL 2461367, at *4 (7th Cir. Aug. 13, 2009) (Posner, J., concurring).

Here, the judgment indicates that defendant was convicted of distribution of simulated crack cocaine. The Iowa statute of conviction, as noted above, covers distribution of both real and fake drugs; thus, if the judgment had been silent, it may have been permissible to look to the documents mentioned in Shepard to determine which provision of the statute defendant violated. But the judgment is clear – defendant was actually convicted of distributing fake drugs – so there is no need to look any further.[6]

For these reasons, I conclude that defendant does not qualify as an armed career criminal under 18 U.S.C. § 924(e).

**IT IS ORDERED** that this matter is scheduled for **SENTENCING** on **Thursday, November 12, 2009, at 10:30 a.m.**

---

[6] Further, as the government notes, it seems unlikely that the judgment contains a clerical error, as other portions of the record mention "simulated" crack cocaine.

7

**IT IS FURTHER ORDERED** that the parties file any further sentencing motions or memoranda no later than **November 5, 2009**.

Dated at Milwaukee, Wisconsin, this 15th day of September, 2009.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge